**LONG EQUIPMENT COMPANY, INC.,**
**Plaintiff-Appellee,**

v.

**James KEETON, Defendant-Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

April 29, 1987.

Permission to Appeal Denied by
Supreme Court Sept. 8, 1987.

Billy W. Townsend, Hohenwald, for defendant-appellant.

Ricky L. Wood, Parsons, for plaintiff-appellee.

HIGHERS, Judge.

This case presents an appeal from a judgment for the plaintiff and dismissal of the defendant's counterclaim.

The defendant, James Keeton, and the plaintiff, Long Equipment Company, the dealer, entered into a retail installment contract and security agreement on August 24, 1981, in which Keeton purchased an International long-haul truck. At the time, the defendant lived in Hohenwald, Tennessee and leased his truck and services to Hohenwald Truck Lines. After the sale, the dealer assigned the contract to International Harvester Credit Corporation (IHCC).

At the time of the sale, the parties agreed that the transaction would be exempt from Tennessee sales taxes. Sixteen days later, however, Keeton received a letter from the Tennessee Department of Revenue informing him that sales taxes were due, and that his application for title was being held in suspense until he made payment. Keeton did not pay the taxes, but continued to operate the truck for approximately seven months on the tags which he had transferred from his trade-in. When those tags expired, he left Hohenwald Truck Lines and leased to a Kentucky company, with whom he operated for approximately four months on temporary Kentucky tags. Kentucky then refused to issue another temporary tag without proof of title, and Keeton returned to Tennessee. He parked the truck and defaulted on his payments under the installment contract.

The truck was repossessed by IHCC and stored on the dealer's lot. IHCC gave notice of private sale to Keeton on October 30, 1982. Pursuant to an agreement between IHCC and the dealer, the dealer bid in the truck at the net payoff of $52,266.85. The dealer kept the truck for approximate-ly 60 days, then exercised its option of limited liability in lieu of repurchase. This option entailed paying IHCC only 10% of the unpaid cash balance of $46,500.00, or $4,650.00. IHCC thus retained possession of the truck, and bore the major portion of the loss.

The dealer brought suit against Keeton in General Sessions Court, seeking recovery of the $4,650.00. The dealer obtained judgment, and the defendant appealed to the Circuit Court for trial de novo. A counterclaim was filed in which the defendant alleged that the plaintiff was guilty of breach of contract for its failure to pay the sales taxes, and that the defendant was misled as to the exempt status of the transaction.

The defendant moved for summary judgment on the grounds that the plaintiff was seeking a deficiency judgment and as it was not the secured party, the action could not be maintained. The motion was denied, and trial was had on February 26, 1986, before a judge sitting without a jury. On April 18, 1986, judgment was entered for the plaintiff in the amount of $4,650.00, and the defendant's counterclaim was dismissed. The defendant moved for a new trial and for additional findings of fact, both of which motions were denied. An appeal was subsequently perfected to this Court.

■ The defendant raises five issues on appeal. The first is whether the plaintiff has standing to sue for a deficiency judgment. This issue can be disposed of by pointing out that although the dealer termed the amount it was seeking a "deficiency," this is not a deficiency such as is contemplated by the Uniform Commercial Code, T.C.A. § 47-9-504(2). IHCC is the secured party in this case, and it is IHCC that has the right to seek a true deficiency judgment, and a corresponding duty to conduct any sale of the collateral in a commercially reasonable manner. See T.C.A. § 47-9-504(3). The defendant cannot raise against the plaintiff defenses which he may have against the secured party. The dealer is seeking only the out-of-pocket expenses incurred as a result of the defend-

ant's default. It clearly has standing to maintain the action.

The defendant's second issue is whether the dealer's failure to pay the sales taxes on the transaction was a breach of contract.

T.C.A. § 67–6–315 provides that the retail sale of a motor vehicle that is removed for use in another state within three days of purchase is exempt from the sales tax. The trial court found that the defendant had signed a sworn affidavit in which he stated that the truck would be removed to Atlanta, Georgia within three days, and held that the dealer was entitled to rely on this affidavit. Thus the dealer was not liable to the defendant for the sales taxes. Although this result is correct, we do not agree with the trial court's reasoning.

■ The plaintiff was not entitled to rely upon the affidavit signed by Keeton. T.C.A. § 67–6–315 exempts from the sales tax the "retail sale of motor vehicles ... *that are not registered and titled in this state ...*" (emphasis added.) Clearly the statute contemplates that the vehicle will be removed from the state permanently, making Tennessee title and registration unnecessary. Yet the defendant *did* apply for Tennessee title on the same day that the installment contract was entered into, using his Tennessee address. The plaintiff was aware of this; in fact, the plaintiff's secretary went to the Decatur County Courthouse and obtained the title application for Keeton. The plaintiff also testified that at the time of the sale he knew Keeton was operating inside the state about 40% of the time. The plaintiff therefore knew or should have known that the transaction was not exempt under T.C.A. § 67–6–315.

As the sale was not exempt under T.C.A. § 67–6–315, sales taxes were due and payable at the time of the transaction.

■ The legal incidence of the sales tax is upon the seller, not upon the consumer. *Beare Co. v. Olsen,* 711 S.W.2d 603, 605 (Tenn.1986); *South Central Bell Telephone Co. v. Olsen,* 669 S.W.2d 649, 651 (Tenn.1984); *Smoky Mountain Canteen Co. v. Kizer,* 193 Tenn. 598, 247 S.W.2d 69

(1952); T.C.A. § 67–6–501. T.C.A. § 67–6–502, however, requires the seller to collect the tax from the consumer insofar as possible. *See also Beare Co., supra,* 711 S.W.2d at 605. Thus, although the seller is liable to the state, *as between the seller and the consumer* the seller is entirely justified in requiring the consumer to pay the tax. The issue here is whether there are circumstances in this case that ought to prevent the plaintiff from collecting the tax from the defendant, thus making the dealer totally liable for the sales taxes.

■ We do not find any evidence in the record to indicate that the tax should not be collected. If there was a deliberate attempt wrongfully to avoid paying the sales tax, it would appear that both parties were participants in the scheme. It is possible, however, that the parties were simply confused as to the law regarding sales tax exemptions, with no fault on either side. A misunderstanding on both sides is not sufficient justification for making the dealer shoulder the ultimate tax consequences when the statute puts that burden on the defendant. In fact the State, for reasons unknown, attempted to collect first from the defendant, and the dealer was not contacted. The dealer did not breach the installment contract; the defendant's revocation of acceptance and default were unjustified.

■ The third issue raised on appeal is whether the plaintiff violated the provisions of T.C.A. § 47–18–104, the Tennessee Consumer Protection Act, entitling the defendant to treble damages under T.C.A. § 47–18–109(a). As stated previously, it appears that there was simply a misunderstanding; however, if the plaintiff furnished misleading information, it was in an attempt to deceive the department of revenue, not the defendant. Therefore, the Consumer Protection Act was not violated.

■ The defendant's fourth issue is whether evidence indicating the percentage of the plaintiff's past transactions classified as exempt, should have been admitted. We hold that the trial court was correct in adjudging the evidence to be inadmissible.

The evidence was sought in order to establish that the dealer's course of business conduct was regularly to classify sales as exempt. Evidence that many or even most of the past sales were exempt would not, however, prove that the dealer was defrauding the State or that it regularly misled its customers.

■ The final issue is whether the trial court erroneously denied the defendant's motion for additional findings of fact. Although under T.R.Civ.P. 52.01 findings of fact are required upon motion by either party prior to entry of judgment, the decision whether to grant a motion for additional findings under Rule 52.02 is discretionary with the court. The rule provides that the court *may* amend its findings or make additional findings. We cannot say the trial court abused its discretion in refusing to make further findings.

The judgment of the trial court is affirmed. Costs on appeal are adjudged against the appellant.

FARMER, J., and SUMMERS, Special Judge, concur.